UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: QUEYROUZE, ET AL.

CIVIL ACTION

NO. 14-2715

SECTION: "E" (2)

## ORDER AND REASONS

Before the Court is a Motion to Withdraw the Reference filed by Defendants Randall M. Alfred and Randall M. Alfred, APLC.[1] Plaintiff opposes the motion.[2] Both parties have briefed the matter and the underlying issues extensively.[3] For the reasons stated herein, the motion is **DENIED**.

## BACKGROUND

On January 11, 2011, Forty Acre Corporation ("Forty Acre") filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Louisiana.[4] Randall M. Alfred ("Alfred"), the Defendant in the present adversarial matter, served as counsel to Forty Acre both before and during the bankruptcy proceedings.[5] Steve Queyrouze ("Queyrouze"), the Plaintiff, serves as the plan trustee in Forty Acre's bankruptcy proceedings.[6]

On October 2, 2014, Queyrouze filed a Complaint against Alfred and his law firm, arguing *inter alia* that Alfred negligently represented Forty Acre both prior to and

---

[1] *In re Queyrouze*, No. 14-2715, R. Doc. 1 (E.D. La.).
[2] *In re Queyrouze*, No. 14-2715, R. Doc. 9 (E.D. La.).
[3] *In re Queyrouze*, No. 14-2715, R. Docs. 1, 9, 13, 17, 18 (E.D. La.).
[4] *In re Forty Acre Corporation*, No. 11-10074, R. Doc. 1 (Bankr. E.D. La.).
[5] *See In re Forty Acre Corporation*, No. 11-10074, R. Doc. 1, 10 (Bankr. E.D. La.). Alfred no longer represents Forty Acre. The bankruptcy court terminated Alfred's representation of Forty Acre on November 15, 2013. *See In re Forty Acre Corporation*, No. 11-10074, R. Doc. 213 (Bankr. E.D. La.).
[6] *See In re Forty Acre Corporation*, No. 11-10074, R. Doc. 1, at ¶4 (Bankr. E.D. La.).

1

during its bankruptcy.[7] It is this Complaint that Defendants argue should be withdrawn from the bankruptcy court and decided by the district court.[8] The facts pertinent to the resolution of Defendants' motion to withdraw the reference are set forth below.

I.   **PRE-BANKRUPTCY**

In the Complaint, Queyrouze represents that Alfred committed a series of negligent acts while serving as counsel to Forty Acre and its principal shareholders—Michael LeBlanc and Mary Kaye LeBlanc (collectively, "the LeBlancs").[9] Queyrouze argues that the LeBlancs hired Alfred to provide legal advice and services in connection with a potential sale and/or exchange of real property owned by Forty Acre.[10] Soon thereafter, the LeBlancs introduced Alfred to a buyer interested in purchasing the property from Forty Acre.[11] However, this buyer, C&R Developers, Inc. ("C&R"), allegedly promised Alfred financial incentives during the course of the negotiations, and Alfred consequently agreed to become a registered agent for C&R in Louisiana.[12] Alfred continued to serve as Forty Acre's attorney after becoming the registered agent of C&R.[13]

Queyrouze contends that Alfred owed fiduciary duties to both C&R and Forty Acre, but Alfred was unable to satisfy those duties due to the "opposite and competing interests" possessed by C&R and Forty Acre in connection with the sale negotiations.[14] For example, Alfred allegedly persuaded Forty Acre to pass on other qualified and

---

[7] *In re Forty Acre Corporation*, No. 11-10074, R. Doc. 245 (Bankr. E.D. La.); *Steve Queyrouze v. Randall M. Alfred, et al.*, No. 14-1050, R. Doc. 1, at ¶66 (Bankr. E.D. La.).
[8] *See In re Queyrouze*, No. 14-2715, R. Doc. 1 (E.D. La.).
[9] *Steve Queyrouze v. Randall M. Alfred, et al.*, No. 14-1050, R. Doc. 1, at ¶¶9–64 (Bankr. E.D. La.).
[10] *Steve Queyrouze v. Randall M. Alfred, et al.*, No. 14-1050, R. Doc. 1, at ¶10 (Bankr. E.D. La.). Specifically, Alfred was hired to represent Forty Acre and the LeBlancs in the sale or exchange of approximately 1,042 acres of land owned by Forty Acre and 3 acres of land owned individually by the LeBlancs. *Id.*
[11] *Id.* at ¶14.
[12] *Id.* at ¶¶16–17.
[13] *Id.*
[14] *Id.* at ¶¶20–22.

interested buyers due to the prospective sale to C&R.[15] Moreover, according to Queyrouze, Alfred convinced the LeBlancs to structure the pending sale to C&R in a manner that was ultimately disadvantageous to Forty Acre.[16] Specifically, Queyrouze alleges that Alfred persuaded the LeBlancs to transfer ownership of the property to C&R, such that C&R could then use the property as collateral to obtain adequate financing to consummate the sale.[17] Alfred assured the LeBlancs that their interests would remain protected.[18] Nevertheless, Queyrouze argues that Alfred failed to safeguard the interests of the LeBlancs and Forty Acre, causing Forty Acre to ultimately lose the subject property in foreclosure.[19] Forty Acre then declared bankruptcy.[20]

## II. POST-BANKRUPTCY

Queyrouze argues that Alfred continued his negligent representation of Forty Acre in the bankruptcy proceedings.[21] Specifically, Alfred allegedly failed to timely file a plan of reorganization," which allowed the sole creditor of Forty Acre to prepare and propose a plan instead.[22] More generally, Queyrouze submits that Alfred was negligent

---

[15] *Id.* at ¶20.
[16] *See generally id.* at ¶¶39–53, 66. Among Alfred's misdeeds and omissions, Queyrouze argues *inter alia* that Alfred (1) failed to ensure that "Forty Acre's right and interests in the Subject Property would not be lost or impaired;" (2) failed to "competently prepare and record a Counter Letter;" and (3) advised "Forty Acre to pass on other qualified and willing purchases in lieu of the deal proposed by [C&R]." *Id.* at ¶66. Although the transaction between Forty Acre and C&R is rather complicated, its details are not relevant to the present motion.
[17] *Id.* at ¶¶20, 28.
[18] *Id.* at ¶26. Specifically, Alfred apparently explained that C&R would provide Forty Acre with a counter letter, which would allow Forty Acre to rescind the sale and regain possession and ownership of the property. *Id.*
[19] *Id.* at ¶¶41–53.
[20] *Id.* at ¶¶53–57. Queyrouze also argues that Forty Acre could have avoided bankruptcy by using available bond forfeiture money to stay current on its loan obligations. *Id.* at ¶57. Queyrouze seemingly submits that Alfred's failure to recommend this course of action forced Forty Acre into bankruptcy. *See generally id.* at ¶¶55–57.
[21] *See, e.g., id.* at ¶¶57–64.
[22] *Id.* at ¶¶58–59.

and committed malpractice throughout "the course and scope of his representation of the Forty Acre Corporation, the debtor in possession."[23]

As stated above, Queyrouze filed a Complaint against Alfred on October 2, 2014, alleging malpractice and negligence on the part of Alfred both prior to and during the bankruptcy proceedings.[24] This Complaint was automatically referred to the bankruptcy court per Local Rule 83.4.1 of the Eastern District of Louisiana.[25] On November 26, 2014, Defendants Alfred and Randall M. Alfred, APLC, filed the present motion to withdraw the reference, arguing that Queyrouze's Complaint is not properly before the bankruptcy court and should instead be decided by the district court.[26]

## LAW AND ANALYSIS

The standard for when a district court may withdraw the reference from bankruptcy court is set forth in 28 U.S.C. § 157(d). Section 157(d) provides for both mandatory and permissive withdrawal:

> The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, for cause shown. The district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce.[27]

### I. MANDATORY WITHDRAWAL

The district court is required to withdraw the reference if it determines that resolution of the proceedings requires consideration of both the Bankruptcy Code and

---

[23] *See In re Queyrouze*, No. 14-2715, R. Doc. 9, at *3 (E.D. La.).
[24] *In re Forty Acre Corporation*, No. 11-10074, R. Doc. 245 (Bankr. E.D. La.); *Steve Queyrouze v. Randall M. Alfred, et al.*, No. 14-1050, R. Doc. 1, at ¶66 (Bankr. E.D. La.).
[25] Local Rule 83.4.1 provides: "All cases under Title 11 and all proceedings arising under Title 11 or arising in or related to a case under Title 11 are transferred by the district court to the bankruptcy judges of this district. As set forth in 28 U.S.C. 157(b)(5), personal injury tort and wrongful death claims must be tried in the district court."
[26] *See generally In re Queyrouze*, No. 14-2715, R. Doc. 1 (E.D. La.).
[27] 28 U.S.C. § 157(d).

other U.S. laws regulating organizations or activities that affect interstate commerce.[28] The mandatory withdrawal provision has generally been interpreted strictly, "granting withdrawal of the reference when the claim and defense entail material and substantial consideration of non-Bankruptcy Code federal law."[29]

In this case, the Defendants do not seek mandatory withdrawal of the reference,[30] nor is such withdrawal appropriate under the circumstances.[31] Thus, the Court will consider whether permissive withdrawal is appropriate.

## II.   PERMISSIVE WITHDRAWAL

The Fifth Circuit has held that, to determine whether to withdraw a reference on permissive grounds, district courts should consider whether the matter at issue is a core or a non-core proceeding.[32] Further, courts should consider whether the proceedings involve a jury demand and whether withdrawal would further the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtor's and creditors' resources, and expediting the bankruptcy process.[33]

### a.   *Nature of the Proceedings*

The first element addresses whether the claims at issue are "core" or "non-core." The term "core proceeding" is not explicitly defined by statute, but the Bankruptcy Code

---

[28] *Id.*
[29] *In re OCA, Inc.*, No. 06-3811, 2006 WL 4029578, at *2 (E.D. La. Sept. 19, 2006) (citing *Lifemark Hosps. of La., Inc. v. Liljeberg Enters., Inc.*, 161 B.R. 21, 24 (E.D. La. 1993); *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 145 B.R. 539, 541 (N.D. Tex. 1992); *In re Johns-Manville Corp.*, 63 B.R. 600, 603 (S.D.N.Y. 1986); *In re White Motor Corp.*, 42 B.R. 693, 704 (N.D. Ohio 1984)).
[30] *See generally In re Queyrouze*, No. 14-2715, R. Doc. 1, at *10 (E.D. La.).
[31] The claims sought to be withdrawn are not founded upon federal law. Rather, the claims are state-law causes of action for negligence and dereliction of professional duty. *Steve Queyrouze v. Randall M. Alfred, et al.*, No. 14-1050, R. Doc. 1, at ¶67 (Bankr. E.D. La.).
[32] *See, e.g.*, *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985).
[33] *Id.*

provides some illustrative examples.[34] Moreover, the Fifth Circuit has noted that a proceeding is core if it "invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."[35]

In this case, Plaintiff Queyrouze argues that the allegations in his Complaint set forth core matters, and thus the motion to withdraw the reference should be denied.[36] Queyrouze contends that the action against Alfred is "inextricably connected to the bankruptcy proceeding" and is "inseparable from the bankruptcy context."[37] Queyrouze relies extensively on the Fifth Circuit's decision in *Southmark*, in which the court deemed certain professional malpractice claims to be core matters.[38] However, the Court notes that the parallels between the present case and the *Southmark* decision are tenuous, due to the many acts of negligence that allegedly took place pre-bankruptcy in this case.[39] Moreover, the malpractice allegations in *Southmark* were levied against "court-appointed professionals," not a private attorney for the debtor.[40] The *Southmark* court narrowed its holding on those grounds, recognizing a need for the court to "police the fiduciaries" that it appoints.[41]

---

[34] *See* 28 U.S.C. §157(b)(2) ("Core proceedings include, but are not limited to—matters concerning the administration of the estate; . . . proceedings to determine, avoid, or recover preferences; . . . proceedings to determine, avoid, or recover fraudulent conveyances; . . . [and] other proceedings affecting the liquidation of the assets of the estate . . . .").
[35] *In re Wood*, 825 F.2d 90, 97 (5th Cir. 1987). *See also In re Southmark*, 163 F.3d 925, 930 (5th Cir. 1999).
[36] *In re Queyrouze*, No. 14-2715, R. Doc. 9, at *3–4 (E.D. La.).
[37] *Id.* at *3, 5.
[38] *Id.* at *5 (citing *In re Southmark*, 163 F.3d at 930; 28 U.S.C. § 157(b)(3)).
[39] *Cf. In re Southmark*, 163 F.3d 925. Moreover, Defendants contend that *Southmark* is inapplicable, as the claims of negligence in that case arose pre-plan confirmation, whereas the allegations of negligence in the present case arose post-plan confirmation. *In re Queyrouze*, No. 14-2715, R. Doc. 13, at 2–3 (E.D. La.). However, the Court notes that Queyrouze alleges Alfred was negligent throughout the bankruptcy proceedings, as well as prior to the initiation of bankruptcy. *Steve Queyrouze v. Randall M. Alfred, et al.*, No. 14-1050, R. Doc. 1, at ¶¶41–57 (Bankr. E.D. La.).
[40] *In re Southmark*, 930 F.3d at 927–28, 930.
[41] *Id.* at 931. ("A *sine qua non* in restructuring the debtor-creditor relationship is the court's ability to police the fiduciaries, whether trustees or debtors-in-possession and other court-appointed professionals, who are responsible for managing the debtor's estate in the best interest of creditors. The bankruptcy court must be able to assure itself and the creditors who rely on the process that court-approved managers

The Defendants argue that the matter involves non-core proceedings, and thus the bankruptcy reference should be withdrawn.[42] Specifically, Defendants allege that "the vast majority of the allegations in the adversary proceedings against Alfred involve acts, omissions, or errors that occurred well before Forty Acre Corporation filed for Chapter 11 bankruptcy protection." [43] In other words, Defendants suggest that Queyrouze's allegations are "non-core" because they do not arise within the bankruptcy context and would exist irrespective of the bankruptcy proceedings.[44]

The Court agrees with Defendants' argument. In the present case, the claims at issue do not invoke a substantive right under Title 11, as Queyrouze alleges state law causes of action for negligence, legal malpractice, and breach of fiduciary duty.[45] Moreover, such claims can clearly arise outside of the bankruptcy context. Malpractice claims against attorneys are not exclusive to bankruptcy cases.[46] Thus, the Court finds that the matter at issue involves non-core proceedings.

However, such a finding does not require the Court to withdraw the reference. If a matter is a non-core proceeding, the bankruptcy court is authorized to make findings of fact and law, but those determinations are subject to *de novo* review by the district

---

of the debtor's estate are performing their work, conscientiously and cost-effectively."). *See also* 11 U.S.C. §§ 321, 322, 324 326–331.
[42] *See generally In re Queyrouze*, No. 14-2715, R. Doc. 1, at *12 (E.D. La.).
[43] *In re Queyrouze*, No. 14-2715, R. Doc. 13, at *1 (E.D. La.).
[44] *See generally id.*
[45] *Steve Queyrouze v. Randall M. Alfred, et al.*, No. 14-1050, R. Doc. 1, at ¶67 (Bankr. E.D. La.). However, the Court notes that the state law nature of Queyrouze's allegations is not dispositive. *See In re Southmark*, 163 F.3d at 930 (holding that the "state law origin of Southmark's claims is not dispositive."); *Schultze v. Chandler*, 765 F.3d 945, 949 (9th Cir. 2014). The governing statute expressly provides that the applicability of state law to a proceeding is by itself insufficient to render it a non-core proceeding. *See* 28 U.S.C. § 157(b)(3). This principle stands for the fact that many state law causes of action turn on issues central to the bankruptcy proceeding. *See id.*; *In re Southmark*, 163 F.3d at 930–31 ("This provision, as *Wood* explains, recognizes Justice White's sensible observation in *Marathon* that many truly bankruptcy issues, like the determination of the basis for creditor's claims, turn on state law.").
[46] *See In re Gulf States*, 455 B.R. 869, 875 (E.D. La. 2011) (citing *In re Wood*, 825 F.2d at 95, 97) ("[T]he claims for legal malpractice, breach of fiduciary duty, breach of contract, conspiracy, and fraud are not created by virtue of Title 11. Nor are they of the sort that could only exist in the context of a bankruptcy case. . . . The Debtor would be able to bring these state law claims regardless of whether a bankruptcy case had ever been brought.").

court.[47] In those circumstances, the bankruptcy court acts like a magistrate judge with respect to proceedings that are related but non-core.[48] Although the bankruptcy court cannot issue a final ruling as to non-core matters, it may still serve judicial economy for the bankruptcy court to retain the matter and issue findings, provided the non-core proceedings call upon the special knowledge and experience of the bankruptcy court.[49]

      b.    *Jury Demand*

Alfred demanded a jury in his Answer to Queyrouze's Complaint.[50] Thus, Alfred argues that the reference should be withdrawn because it is well established that bankruptcy courts cannot conduct jury trials.[51] In response, Queyrouze argues that Alfred waived his right to a jury trial by filing an administrative claim with the bankruptcy court.[52] It is without question that a party filing a "formal proof of claim" with the bankruptcy court consents to that court's jurisdiction.[53]

---

[47] *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172–73 (2014). *See also In re OCA*, 2006 WL 4029578, at *3 (citing *In re United States Lines, Inc.*, 197 F.3d 631, 636 (2d Cir. 1999)).
[48] *Arkison*, 134 S. Ct. at 2172; *In re OCA*, 2006 WL 4029578, at *3.
[49] *Arkison*, 134 S. Ct. at 2172; *In re OCA*, 2006 WL 4029578, at *3.
[50] *Steve Queyrouze v. Randall M. Alfred, et al.*, No. 14-1050, R. Doc. 9, at *9 (Bankr. E.D. La.).
[51] *In re Queyrouze*, No. 14-2715, R. Doc. 1, at *13–14 (E.D. La.). *See also In re Clay*, 35 F.3d 190, 197 (5th Cir. 1994).
[52] *In re Queyrouze*, No. 14-2715, R. Doc. 9, at *11–12 (E.D. La.). On November 15, 2012, Alfred filed a motion for administrative claim approving his professional fees. *In re Forty Acre Corporation*, No. 11-10074, R. Doc. 136 (Bankr. E.D. La.). In connection therewith, the bankruptcy court ordered Alfred to submit an order within two days of the court's ruling, but Alfred failed to do so. The status of Alfred's claim for professional fees and whether it remains pending is unclear. However, the Court notes that the motion has not been withdrawn. Moreover, an opposition to the motion was filed by the LeBlancs on November 15, 2013, which suggests that the motion was never resolved or denied. *See In re Forty Acre Corporation*, No. 11-10074, R. Doc. 216 (Bankr. E.D. La.).
[53] *See In re OCA*, 2006 WL 4029578, at *4. Both parties submitted memoranda on the recent Supreme Court decision *Wellness International Network, Limited v. Sharif*, 135 S. Ct. 1932 (2015). *See In re Queyrouze*, No. 14-2715, R. Docs. 17, 18 (E.D. La.). The parties agree that the Supreme Court in *Wellness International* found that private litigants may consent to have their claims adjudicated by a federal bankruptcy court. Rather, the parties dispute the applicability of the *Wellness International* decision to the present case. The Court finds that the *Wellness International* decision does not alter the arguments previously set forth by the parties or the reasoning and conclusions included herein.

In this case, Alfred filed a motion seeking to recover his professional fees, which is tantamount to a formal proof of claim.[54] Alfred demanded a trial by jury in his Answer, but he has waived this right. This factor does not favor a withdrawal of the reference.

### c.  *Judicial Economy*

The interests of uniformity, reducing forum shopping, conserving resources, and expeditious resolution support denying the motion to withdraw the reference.  Forty Acre's bankruptcy case has been pending before the bankruptcy court since November 2011.[55] Thus, the bankruptcy court is much more familiar with the status of Forty Acre's bankruptcy proceedings, Alfred's representation of Forty Acre therein, and the factors that precipitated Forty Acre's declaration of bankruptcy. The bankruptcy court is better suited to determine whether Alfred's representation of Forty Acre was in fact negligent. "Under the circumstances, maintaining the current arrangement is preferable to conducting duplicative pretrial proceedings."[56] In order to promote uniformity, prevent forum shopping, foster the economical use of resources, and expedite the bankruptcy process, the bankruptcy court should retain jurisdiction over Queyrouze's Complaint against Alfred and Alfred's law firm.

## **CONCLUSION**

The allegations of negligence and legal malpractice against Alfred are non-core proceedings. As noted above, the bankruptcy court is generally unable to issue final rulings on non-core matters. However, the bankruptcy court is authorized to submit

---

[54] *See In re Forty Acre Corporation*, No. 11-10074, R. Doc. 136 (Bankr. E.D. La.). The fact that Alfred did not file a "formal proof of claim" is irrelevant. Alfred is not a typical creditor and thus was not required to file a formal proof of claim. *See Deballion v. Steffes*, 195 B.R. 362, 364 (M.D. La. 1996). As an attorney for the debtor, "the proper procedural mechanism for asserting [his] claims was an application for fees." *Id*. In this context, "the distinction between a proof of claim and an application for fees is immaterial." *Id*.
[55] *See In re Forty Acre Corporation*, No. 11-10074, R. Doc. 1 (Bankr. E.D. La.).
[56] *In re OCA*, 2006 WL 4029578, at *5.

reports and recommendations to this Court on issues that are related but non-core.[57] Considering Alfred has waived his right to a jury trial, as well as the interests of judicial economy and expeditious resolution of disputes, the Court finds it appropriate for this matter to remain in bankruptcy court for all pre-trial matters and for trial.[58] "[T]he bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected."[59]

For the reasons stated herein, Defendants' motion to withdraw the reference is hereby **DENIED**.

**New Orleans, Louisiana, this 15th day of September, 2015.**

**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[57] *See supra* notes 47–49. "[T]he Bankruptcy Judge can submit a report and recommendation to [the district court], which will be reviewed *de novo*." *In re OCA*, 2006 WL 4029578, at *5.
[58] *In re Guynes Printing Co. of Texas, Inc.*, No. 15-cv-149, 2015 WL 3824070, at *2 (W.D. Tex. June 19, 2015) (citing 28 U.S.C. § 157(c)(1); *Wellness International*, 135 S. Ct. at 1940) ("For the non-core proceedings, the bankruptcy court can handle all pretrial matters, and issue findings of fact and conclusions of law for any dispositive motions that this Court will then review *de novo*."). *See also City Bank v. Compass Bank*, No. EP-11-MC-372-KC, 2011 WL 5442092, at *6 (W.D. Tex. Nov. 9, 2011); *Michaelesco v. Shefts*, 303 B.R. 249, 252 (D. Conn. 2004) ("[W]ith respect to non-core matters, the bankruptcy court may not issue final orders unless the parties consent. If one of the parties does not consent, the bankruptcy judge submits proposed findings of fact and conclusions of law to the district court. Then the district court enters a final order of judgment after considering the bankruptcy judge's proposed findings and conclusions and after 'reviewing *de novo* those matters to which any party has timely and specifically objected.'"); *see also In re OCA*, 2006 WL 4029578, at *5.
[59] 28 U.S.C. § 157(c)(1).