UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE: QUEYROUZE, ET AL.                         CIVIL ACTION

                                                 NO. 14-2715

                                                 SECTION: "E"

# ORDER AND REASONS

This matter is before the Court on review from the United States Bankruptcy Court for the Eastern District of Louisiana.[1] Steve Queyrouze, Plan Trustee for the Forty Acre Corporation Plan Trust (the "Trust"), opposes the Bankruptcy Court's August 4, 2016 report and recommendation[2] that this Court grant Continental Casualty Company, Randall Alfred ("Alfred"), and Alfred, APLC's (collectively "Defendants") motion for summary judgment.[3] The Trust also seeks review of the Bankruptcy Court's grant of the Defendants' motion to strike.[4]

## I. FACTUAL & PROCEDURAL BACKGROUND[5]

Forty Acre Corporation ("Forty Acre") owned two tracts of land, a 942 acre tract (sometimes referred to as the "Property") and an 80 acre tract, both in Terrebonne Parish,

---

[1] Unless otherwise indicated, citations to the record herein are to case No. 14-2715.
[2] R. Doc. 20; *see* R. Doc. 23 (Defendants' memorandum in support of the Bankruptcy Judge's report and recommendation); R. Doc. 25 (the Trust's memorandum in opposition to the Bankruptcy Judge's report and recommendation).
[3] Bankr. No. 14-1050, R. Doc. 60.
[4] Bankr. No. 14-1050, R. Doc. 79.
[5] The Court derives the factual background from the Trust's amended complaint, Bankr. No. 14-1050, R. Doc. 42; Defendants' statement of uncontested material facts, Bankr. No. 14-1050, R. Doc. 60-2; and the deposition transcript attached to the Trust's opposition to the motion for summary judgment, Bankr. No. 14-1050, R. Doc. 74-4. The dates upon which Forty Acre's reorganization plan and certain court orders were filed are derived from the Bankruptcy Court's docket, Bankr. No. 14-1050. The Trust did not respond to Defendants' statement of uncontested material facts; accordingly, they are deemed to be admitted. *See U.S. Fidelity & Guar. Co. v. Primelink Sys., Inc.*, No. 02–2629, 2003 WL 21715017, at *1 (E.D. La. July 22, 2003) ("According to this Court's Local Rule 56.2, an opposing party's failure to controvert the movant's statement of uncontested material facts shall result in those facts being deemed admitted.").

1

Louisiana. In 2008, Michael and Kaye LeBlanc, Forty Acre's sole shareholders, decided to sell both tracts and approached Alfred for legal advice. After becoming aware that C&R Developers, Inc. ("C&R") was interested in buying a portion of Forty Acre's land, the LeBlancs introduced Steven Serafin, Robert McCullough, and Robert Cook, C&R's principals, to Alfred. Thereafter, Forty Acre agreed to sell C&R the Property for $3,500,000.00.

Shortly after Alfred met Serafin, McCullough, and Cook, Alfred agreed to serve as C&R's registered agent for service of process. Alfred also allowed C&R to use his law office in Houma to function as its Louisiana registered office.[6] As early as April 9, 2009, Alfred and Serafin began discussing the possibility of Alfred's being added to the Board of Directors of Serafin and McCullough's company, Adventure Harbor Estates LLC ("Adventure Harbor"), and Alfred's being included as an equity partner in the business.[7] During these discussions, Serafin (1) remarked "I want to stress that [the LeBlancs] are very trusting of you and your opinion. I believe if you support this parallel direction they will be on board[,] especially with you[r] being on the Board of Directors"; (2) asked Alfred if he "h[ad] an interest in building [his] Bankruptcy business," adding that he had a friend who had "structured a deal with a large national Load Mod company that [wa]s referring the [bankruptcy] work to him"; and that (3) "[h]e could get a similar agreement for [Alfred] if [he were] interested."[8]

On June 23, 2008, with Alfred's assistance, Forty Acre and C&R entered into a Secured Investment Agreement (the "Agreement"), whereby Forty Acre agreed to transfer

---

[6] The office was registered with the Louisiana Secretary of State on June 23, 2008.
[7] No. 14-1050, R. Doc. 74-5 ("[Alfred]: Here is a brief section from the business plan. Please review the 'offering' and let me know your thoughts and draft a section for yourself as a member of the board. There is no question if [Cook] falls on his face Bill and I will include you as an equity partner.").
[8] No. 14-1050, R. Doc. 74-5.

2

the Property to C&R in exchange for a later payment. Under the Agreement, C&R would secure two loans by using the Property as collateral. C&R would hold the proceeds of the first loan, secured by a collateral mortgage on the Property, until C&R secured a second loan, which C&R would use to satisfy the first loan and pay Forty Acre the $3,500,000.00 purchase price. If C&R were unable to secure the second loan, it would return the proceeds of the first loan to the lender, obtain a cancellation of the lien on the Property, and return the Property to Forty Acre unencumbered.

Alfred represented to the LeBlancs that transferring ownership of the Property to C&R outright by quitclaim deed would allow C&R to receive more preferential lending terms from the bank. He also represented that the LeBlanc's ownership interest in the Property would be protected, as C&R would provide Forty Acre with a counter letter, which Alfred contended would allow Forty Acre to rescind the transfer of the Property to C&R and return record ownership of the Property to Forty Acre at any time.

Pursuant to the Agreement, the LeBlancs transferred ownership of the Property to C&R. C&R then used the Property as security to obtain a $999,999.00 loan from Louisiana Federal Land Bank ("Land Bank"). On June 30, 2008, C&R issued a check for $900,000.00 payable to Alfred with the memo "for Mike and Kaye." C&R also agreed to pledge two accounts, referred to as "the Wachovia Accounts," as collateral, but Alfred did not obtain a control agreement on these accounts and later discovered the accounts did not exist, information Alfred did not share with the LeBlancs. The deal ultimately failed because C&R was not able to secure the second loan. On May 28, 2009, Forty Acre recorded the counter letter, reconveying ownership of the Property back to Forty Acre. On June 30, 2009, Serafin made a request to Alfred that he wait "5 to 6 weeks" before attempting to negotiate the $900,000.00 check. During August 2009, Alfred attempted

3

to negotiate the $900,000.00 check, but C&R's Wachovia account on which it was drawn had insufficient funds to honor its payment. Although C&R returned the Property to Forty Acre, it returned ownership of the Property with a $984,082.62 encumbrance.

C&R did not transfer the Land Bank loan proceeds to the LeBlancs, nor did it satisfy the Land Bank loan. Forty Acre, by and through the LeBlancs and on Alfred's advice, executed criminal affidavits against Cook in Terrebonne Parish, and the Terrebonne Parish District Attorney issued a warrant for Cook's arrest.

On March 18, 2010, Land Bank initiated foreclosure proceedings against the Property,[9] and on January 11, 2011, acting on Alfred's advice, Forty Acre filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code, employing Alfred as counsel. In its bankruptcy case, Forty Acre scheduled as assets and debts: (1) a 942 acre tract of land with a $5,000,000.00 value but encumbered by a $999,000.00 lien in favor of Land Bank; (2) an unencumbered 80.235 acre tract of land with a $2,000,000.00 value; and (3) a checking account with a balance of $95.00. Serafin, William McCollough, and Adventure Harbor subsequently filed unsecured proofs of claim totaling $3,050,000.00 related to Forty Acre's alleged breach of contract to sell the 80 acre tract to Adventure Harbor.[10] After being charged with criminal fraud in Terrebonne Parish, Cook posted a $500,000.00 bond which, upon Alfred's motion, was ultimately forfeited and deposited into the Bankruptcy Court's registry on September 16, 2011.

Forty Acre's proposed reorganization plan was due to the Bankruptcy Court on July 11, 2011. Alfred moved for an extension of time to file the plan, and on July 25, 2011,

---

[9] Land Bank ultimately foreclosed on the Property on December 19, 2013 for a bid price of $1.04 million. In January 2014, Land Bank filed a complete release of its claim in the Forty Acre bankruptcy proceeding, stating it had been paid in full.

[10] *See Adventure Harbor Estates, LLC v. LeBlanc*, No. 12-1848, R. Doc. 223 (E.D. La.).

the Bankruptcy Court granted Alfred's motion, setting the new deadline as August 10, 2011. When the proposed plan was not filed by August 10, 2011,[11] pursuant to 11 U.S.C. §§ 1121 and 1123, Forty Acre was forced to file a joint disclosure statement with its creditor, Land Bank. Forty Acre and Land Bank filed their joint disclosure statement on April 20, 2012. The Bankruptcy Court ultimately approved a subsequently filed joint plan ("the Plan"), establishing the Trust and naming Mark L. Roberts as Trustee. Queyrouze succeeded Roberts on June 25, 2014.

Under the Plan, which went into effect on October 16, 2012, the Trust received any and all property in Forty Acre's estate, including the Property and the 80 acre tract, the $500,000.00 proceeds from Cook's bond forfeiture, and any causes of action held by Forty Acre on the confirmation date. The Plan provided that a realtor would market the Trust's real estate for seven months, with closing to be no later than nine months from the Plan's effective date. The realtor could not sell the land for less than $3,500,000.00. If the realtor did not sell the land after nine months, Land Bank could foreclose on the Property. As for Serafin, McCollough, and Adventure Harbor's proof of claims, it was anticipated the Trust would object to the claims; however, in the event the Trust's objections were unsuccessful, the 80 acre tract would be sold at auction to satisfy the unsecured claims. The $500,000.00 in the Bankruptcy Court's registry was disbursed to Alfred to hold in his trust account, pending transfer to the Trust.

On October 3, 2013, Alfred sent a letter to the LeBlancs and Forty Acre terminating his representation. In the letter, he stated:

---

[11] On March 1, 2012, the Bankruptcy Court issued an Order for Alfred to Appear and Show Cause as to why the case should not be dismissed for failure to prosecute. Bankr. No. 11-10074, R. Doc 69. After a status conference held on March 16, 2012, the Bankruptcy Court extended the deadline for filing the plan to April 20, 2012. Bankr. No. 11-10074, R. Doc. 76.

5

> I have received and listened to the messages you left for me on my cell phone. I am of course disturbed by the tone and the content of these messages. The basic understanding I have from them is that you intend to pursue a claim against my errors and omissions insurance in connection with the bankruptcy and foreclosure cases.
>
> I need to advise you that your position in that matter makes it impossible for me to continue as your attorney. I will be formally withdrawing from the bankruptcy matter and suggest you immediately secure another attorney in the Chapter 11 cases as well as the Lank Bank foreclosure.[12]

On November 7, 2013, Alfred filed a Motion to Withdraw as Counsel for Forty Acre, alleging the LeBlancs intended to file a malpractice claim against him.[13] The Bankruptcy Court granted the motion to withdraw on November 15, 2013.

On June 28, 2014, Alfred was deposed in connection with a separate case related to Forty Acre's alleged breach of contract in the sale of its 80 acre tract to Adventure Harbor. During this deposition, Alfred revealed that he knew approximately six months before he attempted to negotiate the $900,000.00 check in late August 2009, that the Wachovia accounts C&R promised to pledge as collateral did not exist. He also admitted he never told the LeBlancs this fact, because they were "distraught," and he did not want to upset them any further.

On October 2, 2014, the Trust filed a complaint against Alfred and his business, Alfred, APLC, for negligence and breach of fiduciary duty. The Trust filed an amended complaint on January 15, 2016, adding as a defendant Continental Casualty Company, the malpractice insurance carrier for Alfred and Alfred, APLC (collectively "Defendants"), and stating three causes of action: (1) breach of fiduciary duty, (2) pre-bankruptcy petition negligence, and (3) post-bankruptcy petition negligence.

---

[12] Bankr. No. 14-1050, R. Doc. 74-12 at 1.
[13] In neither the letter, nor the motion to withdraw, does Alfred mention the date on which he alleges the LeBlancs told him they intended to file a malpractice claim against him.

## II. THE TRUST'S CLAIMS

The Trust's pre-bankruptcy petition negligence claims are based on Alfred's failure to: (1) "appropriately structure the sale and transaction between C&R and Forty Acre involving the 942 acres"; (2) "secure collateral from C&R upon closing in the June 2008 transaction"; (3) "timely deposit the security check provided by C&R to Forty Acre in connection with the June 2008 transaction"; (4) "require a control agreement on C&R and/or Cook's Wachovia accounts"; (5) "disclose multiple conflicts of interest to Forty Acre and its principals"; (6) "timely pursue claims against William McCollough, Steven Serafin and Adventure Harbor Estates, LLC in connection with a failed sale to Adventure Harbor Estates, LLC"; and on Alfred's (7) "recommending that Forty Acre provide a Quitclaim deed to C&R"; and (8) "advising Forty Acre to pass on other qualified and willing purchases of Forty Acre's 942 (and 1022) acres in lieu of the deal proposed by C&R."

The Trust's post-bankruptcy petition negligence claims are based on Alfred's incompetence to handle a bankruptcy case, as evidenced by his failure to: (1) timely file a reorganization plan, leading to the Joint Plan with Land Bank that provided Forty Acre with less favorable terms; (2) challenge legality of the loan and mortgage to Louisiana Land Bank of the subject property in the bankruptcy; (3) disclose to the Trust the opportunity of sale to Sands Harris & Associates, LLC ("Sands Harris") the two tracts totaling 1022 acres belonging to the bankruptcy estate; (4) object to Land Bank's secured claim; (5) use the $500,000.00 in the Court's registry to negotiate a resolution with Land Bank; and (6) disclose his conflicts of interest.

The Trust's breach of fiduciary duty claims are based on Alfred's conduct during the sale of the Property to C&R and the subsequent bankruptcy. According to the Trust,

(1) "[d]uring the course of Alfred's discussions and negotiations with C&R, its agents and representatives made promises of future business dealings and opportunities for financial profit to Alfred"; (2) "Alfred agreed to serve as registered agent for C&R"; (3) "Alfred allowed C&R to use Alfred's law office in Houma to serve as the company's Louisiana business office"; (4) "Alfred notified the Louisiana Secretary of State that his law office would serve as the Louisiana business office of C&R"; (5) "Forty Acre and C&R had opposite and competing interests"; (6) and "Alfred did not disclose his conflict of interest to Forty Acre, and neither Forty Acre, nor the Plan Trustees knew nor had reason to know that Alfred had become conflicted during the period of time Alfred provided legal advice and counsel that was later revealed to be negligent and with catastrophic consequence for Forty Acre, the Plan Trust, and LeBlancs."

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

On March 14, 2016, Defendants filed a motion for summary judgment on the Trust's pre- and post-bankruptcy malpractice claims, arguing the Trust's malpractice claims are perempted under Louisiana Revised Statutes 9:5605A.[14]

The Trust attached several exhibits to its Opposition to the motion for summary judgment in the Bankruptcy Court, including the affidavits of Queyrouze and Roberts.[15]

---

[14] Defendants mentioned the Trust's breach of fiduciary duty claim, Bankr. No. 14-1050, R. Doc. 60 at 5, but did not seek summary judgment on this claim. *See id* at 11. "A claim for breach of fiduciary duty is separate and apart from a claim of legal malpractice . . . ." *Hiern v. Sarpy*, No. 94-835, 1995 WL 640528, at *13 (E.D. La. Oct. 31, 1995); *see also Gerdes v. Cush*, 953 F.2d 201, 204–06 (5th Cir. 1992); *Newsome v. Mendler*, No. 15-1195, 2015 WL 5012310, at *4 n.1 (E.D. La. Aug. 20, 2015). If a claim involves a lawyer's "self-dealing or a breach of the duty of loyalty," then it is a breach of fiduciary duty claim. *Gerdes*, 953 F.2d at 204–06. "Where the attorney has breached the fiduciary duty to the client . . . the ten year prescriptive period [found in Louisiana Civil Code article 3499] applies." *Hiern*, 1995 WL 640528, at *13 (quoting *Gerdes*, 953 F.2d at 204). Instead, Defendants request the Court find "all [of the Trust's malpractice claims] are perempted by the one and/or three year provisions of La. R.S. 9:5605[A]." Bankr. No. 14-1050, R. Doc. 60 at 15. The Bankruptcy Court recommended the Court grant summary judgment "on all claims" asserted by the Trust but, as mentioned above, Defendants did not file a motion for summary judgment on the breach of fiduciary duty claim. The Court will not grant summary judgment on a claim for which summary judgment was not requested or supported.

[15] Bankr. No. 14-1050, R. Docs. 74-10, 74-11.

On June 17, 2016, Defendants filed a motion in the Bankruptcy Court to strike Queyrouze's and Roberts' affidavits, arguing the affidavits "contain self-serving, conclusory statements about the Affiants' lack of awareness of grounds for filing illegal malpractice claim against Alfred" and were not provided to Defendants during the discovery process. The Bankruptcy Court ultimately granted Defendants' motion to strike the two affidavits.[16] The Bankruptcy Court also recommended this Court grant Defendants' motion for summary judgment because all the Trust's claims had prescribed or been preempted.[17]

In its Objection,[18] the Trust avers the Bankruptcy Court applied the incorrect prescriptive period to the malpractice claims, contending Alfred's "intentional withholding of facts . . . constitutes fraud with[in] the meaning of La RS 9:5605E, making the peremptive periods of 9:5605 inapplicable in favor of the one-year prescriptive period set forth in La. C.C. art. 3492."[19] The Trust argues that, because Louisiana Civil Code article 3492 and the doctrine of *contra non valentem* apply to the Trust's claims,[20] the bankruptcy court erred in dismissing its negligence claims as untimely.[21]

### A. Standard of Review

---

[16] R. Doc. 20 at 6–7.
[17] R. Doc. 20 at 36.
[18] R. Doc. 23.
[19] R. Doc. 23 at 10.
[20] *See* LA. CIV. CODE art. 3492; *Wells v. Zadeck*, 89 So. 3d 1145, 1150 (La. 2012) ("Louisiana jurisprudence has long recognized the doctrine of contra non valentem as a means of suspending the running of prescription . . . . [There are] four instances where contra non valentem can be applied to prevent the running of prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; (3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; and (4) where the cause of action is not known or reasonably knowable by the plaintiff, even though this ignorance is not induced by the defendant.").
[21] R. Doc. 23 at 10.

This Court reviews a bankruptcy court's report and recommendation on a motion for summary judgment de novo.[22] Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[23] "An issue is material if its resolution could affect the outcome of the action."[24] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence."[25] All reasonable inferences are drawn in favor of the non-moving party.[26] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[27]

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."[28] If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, to satisfy Federal Rule of Civil Procedure 56's burden, the moving party must do one of two things: it "may submit affirmative evidence that negates an essential element of the nonmoving party's claim" or "demonstrate to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the

---

[22] *Jones v. NCNB Texas, N.A. (In re Jones)*, 143 B.R. 687, 689 (S.D. Tex. 1991).
[23] FED. R. CIV. P. 56; *see also Celotex*, 477 U.S. at 322–23.
[24] *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[25] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[26] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[27] *Hibernia Nat. Bank v. Carner*, 997 F.2d 94, 98 (5th Cir. 1993) (citing *Amoco Prod. Co. v. Horwell Energy, Inc.*, 969 F.2d 146, 147–48 (5th Cir. 1992)).
[28] *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 323).

nonmoving party's claim."[29] Under the Rule 56 standard, the moving party bears the burden of presenting summary judgment evidence that conclusively shows that the limitations period has run.[30]

If the moving party successfully carries its burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[31] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[32]

"[U]nsubstantiated assertions are not competent summary judgment evidence."[33] Rather, "the party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[34]

### B. Applicable Law

Under Louisiana Revised Statutes 9:5605, legal malpractice cases must be brought:

> [W]ithin one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed

---

[29] *Celotex*, 477 U.S. at 331.
[30] *Edmundson v. Amoco Prods. Co.*, 924 F.2d 79, 82 (5th Cir. 1991); *see also St. Martin v. Quintana Petroleum Corp.*, No. 98-2095, 1999 WL 232635, at *2 (E.D. La. Apr. 19, 1999) ("Dismissal on the basis of summary judgment is appropriate if the moving party demonstrates that the plaintiffs failed to file suit before the prescriptive period applicable to their claims had run, and the plaintiffs are unable to designate specific facts, beyond the pleadings, to show that the suit is not barred by prescription.").
[31] *Celotex*, 477 U.S. at 322–25.
[32] *Id.* at 332–33.
[33] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324).
[34] *Id.* (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)) (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.[35]

The one-year prescriptive and three-year peremptive periods, however, do "not apply in cases of fraud, as defined in Civil Code Article 1953."[36]

Civil Code Article 1953 defines fraud as "A misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other." "[T]o bring a cause of action for fraud, the following three elements must be alleged: '(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resultant injury.'"[37] Civil Code article 1957 states "Fraud need only be proved by a preponderance of the evidence and may be established by circumstantial evidence."[38] Under Article 1953, "fraud may result not only from an act, such as a false assertion or suppression of the truth, but also from a failure to act, such as silence, that is calculated to produce a misleading effect."[39] "To find fraud from silence, [however,] there must be a duty to speak."[40]

If an attorney commits fraud as defined in Louisiana Civil Code article 1953, the aggrieved client's claim is governed by the one-year prescriptive period for delictual actions found in Louisiana Civil Code article 3492.[41] Under article 3492, a plaintiff's legal

---

[35] La. R.S. 9:5605A.
[36] La. R.S. 9:5605E.
[37] *Titus v. Wilson*, 2015-0799 (La. App. 4 Cir. 1/20/16), 186 So.3d 255, 260 (quoting *Chapital v. Harry Kelleher & Co.*, 13-1606, p.13 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 86); *see also Williams v. WMX Techs.*, 112 F.3d 175, 177 (5th Cir. 1997) (citing *Cyrak v. Lemon*, 919 F.2d 320 (5th Cir. 1990)) (stating the requisite elements of a fraud claim as: "(1) a misstatement or omission; (2) of material fact; (3) made with the intent to defraud; (4) on which the plaintiff relied; and (5) which proximately caused the plaintiff's injury").
[38] La. C.C. art. 1953.
[39] La. C.C. art. 1953, note (b).
[40] *First Am. Bankcard, Inc. v. Smart Business Tech., Inc.*, 178 F.Supp.3d 390, 401 (E.D. La. 2016).
[41] *Lomont*, 172 So. 3d at 637. Civil Code article 3292 states "Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained."

malpractice claim is untimely if it is filed more than one year after "the day injury or damage is sustained."[42] Although Louisiana Civil Code article 3467 provides that "prescription runs against all persons unless [an] exception is established by legislation," the Louisiana Supreme Court has applied the jurisprudential doctrine of *contra non valentem* as an exception to this statutory rule.[43] Thus, the one-year period found in Louisiana Civil Code article 3492 is "suspend[ed] or delay[ed]" upon a showing that the attorney "has done some act effectually to prevent the [plaintiff] from availing himself of his cause of action" or that "the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant."[44]

### C. Analysis

The Trust filed the instant adversary complaint against Defendants on October 2, 2014. In its Amended Complaint, the Trust brings three causes of action: (1) pre-bankruptcy petition malpractice, (2) post-bankruptcy petition malpractice, and (3) breach of fiduciary duty.[45] Defendants seek summary judgment on the Trust's malpractice claims based solely on the applicability of the three-year peremptive period found in Louisiana Revised Statutes 9:5605A.[46] Defendants do not seek summary judgment that

---

La. C. C. art. 3292. "[T]he 'date of discovery' from which prescription/peremption begins to run is the 'date on which a reasonable man in the position of the plaintiff has, or should have, either actual or constructive knowledge of the damage, the delict, and the relationship between them sufficient to indicate to a reasonable person he is the victim of a tort and to state a cause of action against the defendant.'" *Lomont*, 172 So. 3d at 638.
[42] *Id.* at 637.
[43] *Lomont*, 172 So. 3d at 637. Louisiana recognizes "four factual situations in which contra non valentem prevents the running of liberative prescription: (1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings which prevented the creditor from suing or acting; [(]3) where the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action; or (4) where the cause of action is neither known nor reasonably knowable by the plaintiff even though plaintiff's ignorance is not induced by the defendant." *Id.*
[44] *Id.*
[45] Bankr. No. 14-1050, R. Doc. 42.
[46] Bankr. No. 14-1050, R. Doc. 60-1; *see also* discussion *supra* note 14.

the claims have prescribed even if Louisiana Revised Statutes 9:5605E, Louisiana Civil Code 3492, and the doctrine of *contra non valentem* apply.

To establish that the malpractice claims are prescribed on their face, thereby shifting the burden of proof to the Trust, Defendants must establish that Louisiana Revised Statutes 9:5605A applies. Defendants' argument that they are entitled to summary judgment based on peremption under subsection A is, in its entirety, that:

> Because peremption is evident from the face of the Complaint and Amended Complaint, the Trustee bears the burden of proving peremption is not applicable. Here, the Trustee's Complaint alleges that Alfred acted improperly in connection with transactions between Forty Acre and C&R, which acts, omissions or errors occurred or were supposed to occur in 2008. Thereafter, Alfred recorded a counter letter in May 2009, and attempted to negotiate C&R's check in August 2009. All of these acts or omissions occurred, however, more than three years before the Trustee filed the instant adversary proceeding on October 2, 2014. Therefore, under the provisions of La. R.S. 9:5605, claims arising out of those transactions are perempted.
>
> Similarly, in his Complaint, the Trustee alleges that Alfred negligently advised Forty Acre to file for Chapter 11 bankruptcy in January 11, 2011, and then failed to file a plan of reorganization within the exclusivity period, or by May 11, 2011, which acts and omissions also occurred more than three years before the Trustee filed the instant adversary proceeding on October 2, 2014.[47]

In effect, Defendants wish the Court to assume that the Trust's claims are based on negligence, rather than fraud, and that as a result, subsection A applies. In their statement of undisputed material facts, Defendants do not include any facts to show the Trust's malpractice claims are based solely on negligence rather than fraud.[48] Instead, Defendants simply list the dates upon which certain events occurred, which does not establish that subsection A applies. Those dates are:

| | |
|---|---|
| 6/2008 | C&R Transaction |
| 9/2009 | C&R Check for $900,000 returned NSF |
| 1/11/2011 | Forty Acre Bankruptcy filed/Order for Relief |

---

[47] Bankr. No. 14-1050, R. Doc. 60-1 at 11.
[48] Bankr. No. 14-1050, R. Doc. 60-3.

14

| | |
|---|---|
| 8/14/2012 | Plan of Reorganization Approved by Bankruptcy Court |
| 10/16/2012 | Effective Date of Plan (Forty Acre assets – including all claims are placed in the Forty Acre Plan Trust, with an independent Trustee) |
| 11/7/2013 | Alfred withdraws as Forty Acre's attorney in the bankruptcy proceeding |
| 10/2/2014 | Trustee files the original Complaint against Alfred |
| 1/15/2016 | Trustee files the Amended Complaint[49] |

Rule 56 states "A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[50] In this case, Defendants seek summary judgment based on the affirmative defense of peremption provided by Louisiana Revised Statutes 9:5605A. Because Defendants assert an affirmative defense, they bear "the initial responsibility of informing the district court of the basis for [their] motion[] and identifying those portions of [the record] which [they] believe[] demonstrate the absence of a genuine issue of material fact."[51]

The issue before the Court is whether subsection A or E applies. In its opinion, the Bankruptcy Court held that subsection A applies based on that court's assumption that, to plead fraud, the Trust had to specifically allege Defendants' actions amounted to "fraud" in their complaint.[52] Whether a plaintiff makes out a claim for fraud, however, does not depend on whether the actions are referred to as "fraud," but rather on the

---

[49] Bankr. No. 14-1050, R. Doc. 60-3 at 6.
[50] FED. R. CIV. PRO. 56(a).
[51] *Celtic Marine Corp. v. James C. Justice Cos.*, 760 F.3d 477, 481 (5th Cir. 2014) (quoting *Celotex*, 477 U.S. at 323); *see Edmundson v. Amoco Prods. Co.*, 924 F.2d 79, 82 (5th Cir. 1991); *see also St. Martin v. Quintana Petroleum Corp.*, No. 98-2095, 1999 WL 232635, at *2 (E.D. La. Apr. 19, 1999) ("Dismissal on the basis of summary judgment is appropriate if the moving party demonstrates that the plaintiffs failed to file suit before the prescriptive period applicable to their claims had run, and the plaintiffs are unable to designate specific facts, beyond the pleadings, to show that the suit is not barred by prescription.").
[52] R. Doc. 20 at 30. The Bankruptcy Court also focused only on whether the Trust pleaded facts sufficient to make out a claim of fraudulent *concealment* of malpractice; the court did not consider a situation in which the fraud is fraud by silence based on not disclosing both a conflict of interest and facts material to the client's decision-making process during the course of the attorney's representation. *Id.* "[E]ach case must be judged on its particular facts to determine whether the attorney's actions are sufficient to invoke La. R.S. 9:5605(E)." *Lomont*, 172 So. 3d at 628.

15

underlying facts alleged.[53] "Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud even if the term 'fraud' is not used."[54] The Bankruptcy Court failed to engage in an analysis of whether the facts alleged would support a claim for fraud. Because the Bankruptcy Court concluded that subsection A applied to the Trust's malpractice claims, the Bankruptcy Court held that the complaint was prescribed on its face, and shifted the burden to the Trust to show that the claims had not prescribed.

The Court finds that the proper analysis is for the Court to determine whether the underlying facts alleged by the Trust make out a claim for fraud. "In addition to Rule 8(a)(2)'s pleading demands,[55] Rule 9(b) supplements Rule 8(a), if fraud is alleged, by requiring circumstances allegedly constituting fraud to be stated with particularity."[56] "Of primary importance in understanding the requirement of Federal Rule 9(b) of pleading the circumstances of an alleged fraud with particularity is the recognition that it does not render the general principles of simplicity set forth in Rule 8 entirely inapplicable to pleadings alleging fraud."[57] "'What constitutes 'particularity' will necessarily differ with the facts of each case . . . . 'Rule 9(b) requires allegations of the particulars of time, place,

---

[53] *Wagoner v. Exxon Mobil Corp.*, No. 09-7257, 2010 WL 3168382, at *2 (E.D. La. Aug. 9, 2010) (citing *In re Hollander*, No. 09-3355, 2009 WL 2707445, at *4 (E.D. La. Aug. 25, 2009)).
[54] *Id.*; *see also Jumonville v. Fed. Home Loan Mortgage Corp.*, No. 04–2295, 2005 WL 1431505, at *6 (E.D. La. June 10, 2005) (finding that a complaint's allegations that defendants "knew or should have known of the vices and defects of said home and did not inform the plaintiff of the same" were sufficient to sustain a claim of fraud even though "fraud" was not expressly pled); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) ("Fraud can be averred by specifically alleging fraud, or by alleging facts that necessarily constitute fraud (even if the word 'fraud' is not used).") (internal quotation marks omitted); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 200 (S.D. N.Y. 2011) ("The language of Rule 9(b) 'is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action.'") (quoting *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004))); 5A Charles Allen Wright et al., *Federal Practice and Procedure* § 1298, at 242–48 (3d ed. 2004).
[55] Rule 8(a) only requires the pleader to provide "a short and plain statement of the claim" for relief.
[56] *Peaker Energy Grp., LLC v. Cargill, Inc.*, 2015 WL 4879415, at * 6 (E.D. La. Aug. 14, 2015).
[57] Wright, *supra* note 54.

and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'"[58]

> [I]t is inappropriate to focus exclusively on the fact that Rule 9(b) requires particularity in pleading the circumstances of fraud.6 This is too narrow an approach and fails to take account of the general simplicity and flexibility contemplated by the federal rules and the many cases construing them; in a sense, therefore, the rule regarding the pleading of fraud does not require absolute particularity or a recital of the evidence, especially when some matters are beyond the knowledge of the pleader and can only be developed through discovery.[59]

"[F]raud by omission or silence is by its very nature difficult to plead with particularity because it does not involve an affirmative misrepresentation, it often does not occur at a specific place or precise time, or involve specific persons."[60] "[I]f circumstances are alleged showing that the pleader is entitled to relief from a fraud perpetrated upon him or her, the plaintiff's right to relief is unaffected by a failure to set forth either of these verbal conclusions in the complaint."[61] Thus, when alleging fraud by silence, at a minimum, a plaintiff must show (1) the information that was withheld, (2) the general time period during which the fraudulent conduct occurred, (3) the relationship giving rise to the duty to speak, and (4) what the person or entity engaged in the fraudulent conduct gained by withholding the information.[62]

The Trust's complaint clearly makes out a claim that Alfred committed a fraud by silence. First, it alleges Alfred withheld the fact that (1) he had a conflict of interest and

---

[58] *Benchmark Elec. Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003) (quoting *Guidry v. Bank of LaPlace*, 954 F.2d 278, 288 (5th Cir. 1992) and *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)); *U.S. ex rel Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009) (explaining that 'Rule 9(b)'s ultimate meaning is context-specific,' and thus there is no single construction of Rule 9(b) that applies in all contexts").
[59] Wright, *supra* note 54.
[60] *First Am. Bankcard, Inc.*, 178 F. Supp. 3d at 402 (quoting *Chrysler Credit Corp. v. Whitney Nat'l Bank*, 824 F. Supp. 587, 598 (E.D. La. 1993)).
[61] Wright, *supra* note 54.
[62] *Chrysler Credit Corp.*, 824 F. Supp. at 598.

(2) his knowing that the Wachovia Accounts to be used as collateral did not exist. Second, the Trust alleges this conflict of interest and failure to disclose began as early as April 9, 2009, when Alfred and Serafin began discussing the possibility of Alfred's being added to Adventure Harbors' Board of Directors and that the Trust did not learn of these alleged frauds until June 28, 2014, when Alfred was deposed in a related case. Third, the Trust alleges that, as the LeBlanc's attorney, Alfred owed a duty to disclose both the conflict of interest and the withheld information regarding the Wachovia accounts.[63] Finally, the Trust alleges Alfred stood to gain: (1) an equity share in Adventure Harbor, (2) a position on Adventure Harbor's board of directors, and (3) a "deal with a large national Load Mod company that [would] refer[] [bankruptcy] work to him."[64] Alfred had a duty to disclose all material information to his clients. This included both his conflict of interest and the fact that the Wachovia accounts did not exist. "Under Louisiana law, the refusal to speak, in the face of an obligation to do so, is not merely unfair, but is fraudulent."[65] In this case, the Court finds the Trust alleged the requisite elements of fraud with sufficient particularity, notwithstanding its failure to specifically refer to Alfred's actions as fraud in the amended complaint. The Court finds that subsection E is applicable to the Trust's two malpractice claims.

In their motion for summary judgment, Defendants seek dismissal of "all" of the Trust's claims, but base their argument with respect to the negligence claims entirely on Louisiana Revised Statutes 9:5605A, and do not even seek summary judgment on the

---

[63] The "principle of undivided loyalty is firmly embedded in the Rules of Professional Conduct (RPC), adopted by [the Supreme Court of Louisiana] pursuant to its exclusive and plenary power to regulate the practice of law." *Scheffler v. Adams & Reese, LLP*, 2006-1774 (La. 2/22/07), 950 So. 2d 641, 651. RPC 1.7 provides, with few exceptions, "a lawyer shall not represent a client if the representation involves a concurrent conflict of interest."
[64] *See* No. 14-1050, R. Doc. 74-5; *Chrysler Credit Corp.*, 824 F. Supp. at 598.
[65] *First Am. Bankcard, Inc.*, 178 F. Supp. 3d at 401 (quoting *Lomont*, 172 So. 3d at 629).

Trust's breach of fiduciary duty claim. Because Louisiana Revised Statutes 9:5605E applies, the Defendants are not entitled to summary judgment that the negligence claims are perempted under subsection A.

Accordingly;

## CONCLUSION

**IT IS ORDERED** that the Court does not adopt the Bankruptcy Court's Report and Recommendation. Defendants' motion for summary judgment on the Trust's negligence claims[66] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to strike[67] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this case be referred to the U.S. Bankruptcy Court for the Eastern District of Louisiana for issuance of findings of fact and conclusions of law.

**New Orleans, Louisiana, this 8th day of November, 2017.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[66] Bankr. No. 14-1050, R. Doc. 60.
[67] R. Doc. 20.